IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, as subrogee of Union Investment Real Estate GmbH,<br>175 Water Street – 18th Floor<br>New York, NY 10038<br>Plaintiff,<br><br>v.<br><br>INDUSTRIAL STEAM CLEANING, INC.<br>90 W. Montgomery Avenue, Suite 300<br>Rockville, MD 20850<br>and<br>INDUSTRIAL STEAM CLEANING, INC. d/b/a GREASEBUSTERS<br>15741 Crabbs Branch Way<br>Rockville, MD 20855<br>and<br>SIMPLEXGRINNELL LP<br>1501 Yamoto Road<br>Boca Raton, FL 33431<br>Defendants. | CASE NO.: 0007850-12 |




## COMPLAINT

Plaintiff, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, as subrogee of Union Investment Real Estate GmbH, by and through their counsel, Edward A. Jaeger, Jr., Esquire, of the law firm of White and Williams LLP, hereby demands judgment, jointly and severally, against Defendants, INDUSTRIAL STEAM CLEANING, INC., INDUSTRIAL STEAM CLEANING, INC. d/b/a GREASEBUSTERS and SIMPLEXGRINNELL LP and complain against Defendants as follows:

## PARTIES

1. Plaintiff, The Insurance Company of the State of Pennsylvania ("ICSOP") is a Pennsylvania corporation with its principle place of business located at 175 Water Street – 18th

Floor, New York, NY 10038. At all times relevant hereto, ICSOP was licensed and authorized to issue policies of insurance in all U.S. states, as well as the District of Columbia. At all times relevant hereto, ICSOP issued a policy of insurance (Policy No. 753-2437) to Union Investment Real Estate GmbH, which covered claims for property damage, business personal property damage, and loss of business income.

2. Union Investment Real Estate GmbH ("Union Investment") is an international investment company specializing in real estate funds for private and institutional investors. Union Investment is headquartered in Hamburg, Germany, with a principle place of business in the United States located at 609 Fifth Avenue, 6th Floor, New York, NY 10017. At all times relevant hereto, Union Investment owned an office building located at 600 13th Street, NW, Washington, D.C. 20005, and was the landlord at that location of M & S Grill, a restaurant owned and operated by McCormick & Schmick's ECP IV, Inc., a national restaurant chain.

3. Defendant, Industrial Steam Cleaning, Inc. ("Industrial Steam Cleaning"), is a Delaware corporation, with its principle place of business located at 90 W. Montgomery Avenue, Suite 300, Rockville, MD 20850. Upon information and belief, Defendant, Industrial Steam Cleaning, is the parent company or franchisor of Defendant, Industrial Steam Cleaning, Inc. d/b/a Greasebusters. At all times relevant hereto, Industrial Steam Cleaning was in the business of cleaning commercial kitchen exhaust hood systems, and in particular, serviced the kitchen exhaust hood system at M & S Grill.

4. Defendant, Industrial Steam Cleaning, Inc. d/b/a Greasebusters ("Greasebusters"), is a Maryland corporation, with its principle place of business located at 15741 Crabbs Branch Way, Rockville, MD 20855. Upon information and belief, Defendant, Greasebusters, is a subsidiary or franchisee of Defendant, Industrial Steam Cleaning. At all times relevant hereto,

Greasebusters was in the business of cleaning commercial kitchen exhaust hood systems, and in particular, serviced the kitchen exhaust hood system at M & S Grill.

5. Defendant, SimplexGrinnell LP ("SimplexGrinnell"), is a Delaware corporation, with its principle place of business located at 1501 Yamoto Road, Boca Raton, FL 33431. At all times relevant hereto, SimplexGrinnell was in the business of designing, installing, and servicing fire sprinkler and suppression systems, and in particular, serviced and maintained the fire sprinkler and suppression system at M & S Grill.

**JURISDICTION**

6. Jurisdiction and venue are appropriate in this Court insofar as the tortious acts from which this matter arise occurred within the District of Columbia, all of the Defendants have significant contacts within the District of Columbia, and all of the Defendants regularly conduct business within the District of Columbia.

**FACTS**

7. At all times relevant to this Complaint, McCormick & Schmick's operated a restaurant called M & S Grill, located at 600 13th Street, NW, Washington, D.C. 20005.

8. At all times relevant to this Complaint, Union Investment owned the building in which M & S Grill operated, located at 600 13th Street, NW, Washington, D.C. 20005.

9. At all times relevant to this Complaint, Plaintiff, ICOSP, insured the property owned by Union Investment, located at 600 13th Street, NW, Washington, D.C. 20005, and occupied by, among others, M & S Grill.

10. Prior to October 9, 2010, Defendant, SimplexGrinnell, routinely serviced, maintained, and inspected the kitchen exhaust hood system and fire sprinkler/suppression system at M & S Grill.

11. Prior to October 9, 2010, Defendants, Industrial Steam Cleaning and Greasebusters, routinely serviced, maintained, inspected, and cleaned the kitchen exhaust hood system at M & S Grill.

12. On October 9, 2010 at approximately 1:20 P.M., a fire was reported on the front cook line in the kitchen of M & S Grill.

13. Upon information and belief, the fire started when a front-line cook accidentally lit the wrong stove-top burner on which sat a metal container of cooking oil.

14. Upon information and belief, the container of oil ignited, sending flames into the kitchen's exhaust hood system.

15. After receiving notice of the fire, the District of Columbia Fire Department was dispatched to the scene, at which time they proceeded to fight the fire, ultimately extinguishing it after some period of time.

16. Despite being extinguished on the stove-top by the use of the hand-held fire extinguisher, the fire from the oil on the stove-top traveled up into the kitchen's exhaust hood, into the exhaust system ductwork, and vertically up through the building, where it finally exited through an exhaust vent in the roof.

17. Upon information and belief, as the fire made its way through the building's exhaust system, the heat from the fire activated one of the fire sprinkler heads located on the twelfth floor, causing the sprinkler head to discharge water into the penthouse on the twelfth floor, down a service elevator shaft, and out of the building through the first floor parking garage.

18. In addition, two other fire sprinkler heads were activated during the fire, one other on the twelfth floor, and a third near the building's loading dock.

19. Following the fire, it was discovered that the fire suppression system was not operating properly, primarily due to the fact that the control cable that activates the system was not moving freely around one of the pulleys in the conduit that houses the cable.

20. In addition to an accumulation of grease around the pulley, the pulley bearing was not properly seated in the pulley housing, thus inhibiting the control cable from allowing the system to discharge its extinguishing agent onto the fire.

21. As a result of the fire and related fire fighting activity that ensued, the property owned by Union Investment suffered substantial damage, including, but not limited to fire damage, smoke damage, and water damage.

22. On a regular basis, Defendant, SimplexGrinnell, services and inspects an ANSUL fire suppression system, which protects the front-line cooking station.

23. Following each inspection of the ANSUL system, SimplexGrinnell prepared a "Range Hood Systems Report," listing each of the items on the system that were inspected during that particular visit.

24. In each of the Range Hood Systems Reports provided to M & S Grill prior to the fire of October 9, 2010 – including reports dated March 17, 2009, September 17, 2009, and March 5, 2010 – Item No. 19 ("Check travel of cable nuts/S-hooks") was marked with a check, presumably indicating that this function of the fire suppression system had been inspected.

25. In none of the above referenced reports was mention made of any problem with the travel of the cable.

26. A grease accumulation, an improperly seated bearing, and a deformed cap on the ANSUL system pulley closest to the front-line hood prevented the cable from traveling freely,

thus preventing a device known as an "Automan" from puncturing the propellant cylinder and discharging the extinguishing agent onto the fire.

27. Timely activation of a properly operating suppression system would have resulted in suppression of the fire on the stove-top prior to the fire extending into the grease duct and beyond.

28. Following the fire, it was also discovered that the grease duct serving the front cook line contained char, as did the cleanout in Stair 2, the base and top of the vertical duct that runs up through the building, and the duct immediately before the exhaust fan.

29. Greasebusters' incomplete cleaning of the exhaust duct contributed to the fire spread on October 9, 2010.

30. Upon information and belief, Greasebusters, did not clean the entire interior of the exhaust duct to bare metal, did not inspect all portions of the exhaust duct for grease accumulation, and did not use all available cleanouts to access the duct for better cleaning of grease accumulation.

31. Upon information and belief, the combustible grease that was not removed from the exhaust duct allowed the fire to spread from the exhaust hood in the kitchen to the exhaust vent on the roof of the building.

32. As a direct and proximate result of Industrial Steam Cleaning, Inc.'s, Greasebusters', and SimplexGrinnell's negligence, the fire on October 9, 2010 occurred, accelerated, and spread throughout the building, causing Plaintiff's insured, Union Investment, to suffer loss in the form of damage to their business and real property, and property within their control and possession, extra expenses, business interruption losses, emergency repair expenses, and incidental and consequential damages, in the amount of $363,219.74.

33. At all times relevant hereto, Industrial Steam Cleaning, Inc., Industrial Steam Cleaning, Inc. d/b/a Greasebusters, and SimplexGrinnell, acted through their respective agents, servants, representatives, subcontractors, subagents, workmen and/or employees, who acted within the scope of their authority and in the course of their employment or agency.

34. Pursuant to the aforementioned policy of insurance, ICSOP paid to Union Investment, or on their behalf, the sum of $363,219.74.

35. ICSOP, as subrogee of Union Investment, now seeks recovery from the Defendants named herein for the total amount paid.

**CAUSES OF ACTION**
**COUNT I - NEGLIGENCE**
**(Plaintiff v. SimplexGrinnell)**

36. Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs as though set forth more fully at length herein.

37. SimplexGrinnell owed Plaintiff's insured, Union Investment, a duty to exercise reasonable care under the circumstances in performing inspection, maintenance, and repair work on the fire suppression system, a duty not to damage Union Investment's property, and a duty to perform its work in a skillful and workmanlike manner.

38. SimplexGrinnell breached the duty it owed to Plaintiff's insured, Union Investment, by, among other things:

a) failing to send properly trained and skilled employees to inspect, repair and/or service the fire suppression system;

b) failing to properly inspect, service, repair and/or replace the fire suppression system;

c) failing to properly test the fire suppression system;

d) failing to ensure that all operating devices were designed, located and installed or protected so that they were not subject to mechanical, environmental or other conditions that could render them inoperative;

e) failing to ensure that the extinguishing agent tanks and the propellant gas tanks were not located where they could be subjected to mechanical, chemical or other damage;

f) failing to ensure that at least one fusible link or heat detector was installed within each exhaust duct opening in accordance with the manufacturer's listing;

g) failing to ensure that a fusible link or heat detector was provided above each protected cooking appliance and in accordance with the extinguishing system manufacturer's listing;

h) failing to ensure that the fire suppression system contained the proper number of fusible links and that the links were properly functioning;

i) failing to ensure that the fusible links in the fire suppression system were replaced pursuant to code;

j) failing to ensure that the fire suppression system was operational;

k) failing to ensure that the hood worked properly, and was up to code;

l) failing to ensure that the fire suppression system was tested and inspected in accordance with the requirements set forth in the NFPA Guidelines, and operated in compliance with those code sections;

m) failing to ensure that the fire suppression system was tested and inspected in accordance with the manufacturer's manual, and operated according to the manual;

n) failing to ensure that the fire suppression system's cables and pulleys all functioned properly;

o) failing to ensure that the fire suppression system's cables and pulleys were freely moving and not otherwise impinged;

p) failing to ensure that the fire suppression system's cables and pulleys were cleaned and free of any accumulation of grease or other debris;

q) Failing to properly replace the ANSUL tanks with new stainless steel R-102 tanks;

r) failing to point out, as part of its inspection of the fire suppression system, deficiencies in the design of the system;

s) failing to point out, as part of its inspection of the fire suppression system, that the travel of the cables, cable nuts, S-hooks, and pulleys were all freely moving;

t) failing to ensure that the pulley covers on the fire suppression system were not deformed, thus contributing to the failure of the system to operate properly;

u) failing to ensure that the tank containing the extinguishing agent was not impinged, and that there was sufficient gas in the tank to push the extinguishing agent out of the tank; and

v) failing to perform its work in compliance with all applicable building and fire safety codes, statutes, regulations, ordinances, and accepted industry standards.

39. It was entirely foreseeable that a breach of its duty, including any or all of the aforementioned failures on the part of SimplexGrinnell, would result in damages to Plaintiff's insured, Union Investment.

40. As a direct and proximate result of SimplexGrinnell's negligence, the fire on October 9, 2010 occurred, accelerated, and spread throughout the building, causing Plaintiff's insured, Union Investment, to suffer loss in the form of damage to their business and real property, and property within their control and possession, extra expenses, business interruption losses, emergency repair expenses, and incidental and consequential damages, in an amount in excess of $363,219.74.

41. Pursuant to the aforementioned policy of insurance, ICSOP paid to Union Investment, or on their behalf, the sum of $363,219.74.

42. ICSOP, as subrogee of Union Investment, now seeks recovery from SimplexGrinnell for the total amount paid.

WHEREFORE, Plaintiff hereby demands judgment against Defendant, SimplexGrinnell, in the amount of $363,219.74, plus pre-judgment interest, post-judgment interest, costs, attorney's fees, and any other relief the Court deems equitable and just.

**COUNT II - NEGLIGENCE**
**(Plaintiff v. Industrial Steam Cleaning, Inc.)**

43. Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs as though set forth more fully at length herein.

44. Industrial Steam Cleaning owed Plaintiff's insured, Union Investment, a duty to exercise reasonable care under the circumstances in performing its services for M & S Grill, including the cleaning and degreasing of the kitchen exhaust hood, exhaust system, grease ducts, and exhaust vents, as well as a duty to perform its work in a skillful and workmanlike manner.

45. Industrial Steam Cleaning breached the duty it owed to Plaintiff's insured, Union Investment, by, among other things:

a) failing to send properly trained and skilled employees to perform the work at M & S Grill;

b) failing to properly clean and degrease the hood, duct, and exhaust system in the restaurant;

c) failing to properly clean and degrease the hood, duct, and exhaust system in accordance with applicable codes, regulations and/or ordinances;

d) failing to perform an adequate inspection of the hood, duct, and exhaust system upon completion of its work to ensure that the same was satisfactorily completed;

e) failing to schedule cleanings for the hood, duct, and exhaust system with sufficient frequency to ensure that there would not be an excess build-up of grease in the exhaust system;

f) failing to spend an adequate amount of time in the cleaning of the exhaust system and related ductwork;

g) failing to clean and degrease all areas of the exhaust system, including the ducts that ran from the kitchen exhaust hood to the roof vent;

h) failing to clean and degrease the ducts down to bare metal;

i) failing to properly inspect the exhaust system for an accumulation of grease build-up;

j) failure to properly use all available clean-outs to access the ducts for better cleaning;

k) failing to follow proper and recognized procedures within the industry for industrial cleaning of the hood and duct system;

l) failing to apply to the work the degree of skill which would ordinarily and customarily be brought to such work by competent and skilled contractors;

m) failing to take reasonable and adequate precautions to avoid damage to Plaintiff's insured's property; and

n) failing to properly supervise its agents, servants, workmen and/or employees in the performance of their work.

46. It was entirely foreseeable that a breach of its duty to Plaintiff's insured, Union Investment, including any or all of the aforementioned failures on the part of Industrial Steam Cleaning, would result in damages to Plaintiff's insured, Union Investment.

47. As a direct and proximate result of Industrial Steam Cleaning's negligence, the fire on October 9, 2010 occurred, accelerated, and spread throughout the building, causing Plaintiff's insured, Union Investment, to suffer loss in the form of damage to their business and real property, and property within their control and possession, extra expenses, business interruption losses, emergency repair expenses, and incidental and consequential damages, in an amount in excess of $363,219.74.

48. Pursuant to the aforementioned policy of insurance, ICSOP has paid to Union Investment, or on their behalf, the sum of $363,219.74.

49. ICSOP, as subrogee of Union Investment, now seeks recovery from Industrial Steam Cleaning for the total amount paid.

WHEREFORE, Plaintiff hereby demands judgment against Defendant, Industrial Steam Cleaning, in the amount of $363,219.74, plus pre-judgment interest, post-judgment interest, costs, attorney's fees, and any other relief the Court deems equitable and just.

**COUNT III - NEGLIGENCE**
**(Plaintiff v. Industrial Steam Cleaning, Inc. d/b/a Greasebusters)**

50. Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs as though set forth more fully at length herein.

51. Defendant, Greasebusters, owed Plaintiff's insured, Union Investment, a duty to exercise reasonable care under the circumstances in performing its services for M & S Grill, including the cleaning and degreasing of the kitchen exhaust hood, exhaust system, grease ducts, and exhaust vents, as well as a duty to perform its work in a skillful and workmanlike manner.

52. Greasebusters breached the duty it owed to Plaintiff's insured, Union Investment, by, among other things:

a) failing to send properly trained and skilled employees to perform the work at M & S Grill;

b) failing to properly clean and degrease the hood, duct, and exhaust system in the restaurant;

c) failing to properly clean and degrease the hood, duct, and exhaust system in accordance with applicable codes, regulations and/or ordinances;

d) failing to perform an adequate inspection of the hood, duct, and exhaust system upon completion of its work to ensure that the same was satisfactorily completed;

e) failing to schedule cleanings for the hood, duct, and exhaust system with sufficient frequency to ensure that there would not be an excess build-up of grease in the exhaust system;

f) failing to spend an adequate amount of time in the cleaning of the exhaust system and related ductwork;

g) failing to clean and degrease all areas of the exhaust system, including the ducts that ran from the kitchen exhaust hood to the roof vent;

h) failing to clean and degrease the ducts down to bare metal;

i) failing to properly inspect the exhaust system for an accumulation of grease build-up;

j) failure to properly use all available clean-outs to access the ducts for better cleaning;

k) failing to follow proper and recognized procedures within the industry for industrial cleaning of the hood and duct system;

l) failing to apply to the work the degree of skill which would ordinarily and customarily be brought to such work by competent and skilled contractors;

m) failing to take reasonable and adequate precautions to avoid damage to Plaintiff's insured's property; and

n) failing to properly supervise its agents, servants, workmen and/or employees in the performance of their work.

53. It was entirely foreseeable that a breach of its duty to Plaintiff's insured, Union Investment, including any or all of the aforementioned failures on the part of Greasebusters, would result in damages to Plaintiff's insured, Union Investment.

54. As a direct and proximate result of Greasebusters' negligence, the fire on October 9, 2010 occurred, accelerated, and spread throughout the building, causing Plaintiff's insured, Union Investment, to suffer loss in the form of damage to their business and real property, and property within their control and possession, extra expenses, business interruption losses, emergency repair expenses, and incidental and consequential damages, in an amount in excess of $363,219.74.

55. Pursuant to the aforementioned policy of insurance, ICSOP paid to Union Investment, or on their behalf, the sum of $363,219.74.

56. ICSOP, as subrogee of Union Investment, now seeks recovery from Greasebusters for the total amount paid.

WHEREFORE, Plaintiff hereby demands judgment against Defendant, Greasebusters, in the amount of $363,219.74, plus pre-judgment interest, post-judgment interest, costs, attorney's fees, and any other relief the Court deems equitable and just.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff demands judgment be entered in its favor, jointly and severally, against the Defendants, SimplexGrinnell LP, Industrial Steam Cleaning, Inc., and Industrial Steam Cleaning, Inc. d/b/a Greasebusters, in the amount of $363,219.74, plus pre-judgment interest, post-judgment interest, costs, attorney's fees, and any other relief the Court deems equitable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**WHITE AND WILLIAMS LLP**

BY: ______________________

Edward A. Jaeger, Jr., Esquire
Unified Bar ID #986802
1650 Market Street – Suite 1800
One Liberty Place
Philadelphia, PA 19103
Tel.: (215) 864-6322
Fax: (215) 789-7522
jaegere@whiteandwilliams.com

Attorneys for Plaintiff

Dated: October 2, 2012